UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


DEONTA FREDERICK WILSON,

        Petitioner,

                                Case No. 1:10-cv-1030

v.

                                Hon. Robert J. Jonker

CAROL R. HOWES,

        Respondent.

_____/

## REPORT AND RECOMMENDATION

        Petitioner, Deonta Frederick Wilson has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner is a former prisoner of the Michigan Department of Corrections (MDOC).[1]

### I.      Background

        The underlying facts of petitioner's convictions are summarized as follows. In 2007, Jason Anthony was living on 76th Street in Van Buren County, Michigan, "right behind Degrandchamp's blueberry field." Trial Trans. at pp. 52-54 (docket no. 13). On the evening of March 13, 2007 ("March 13th"), Anthony noticed brake lights in the field. Id. at pp. 52-54. Anthony and his friend Lee Jackson investigated. Id. at pp. 54-56. When Anthony and Jackson arrived on the scene, it appeared that a car was stuck in the field. Id. at p. 56. Anthony recognized two of the people standing by the car, petitioner and Elmer Sullivan. Id. at pp. 57-58. While there

---

[1] MDOC records reflect that petitioner was paroled on March 12, 2013 and remains a parolee as of the date of this report. See MDOC Offender Tracking Information Service (OTIS) at www.Michigan.gov (reference Deonta Frederick Wilson, MDOC No. 270677).

was no "bad blood" between petitioner and Anthony, there was "bad blood" between petitioner and Jackson. *Id.* at p. 58. Petitioner walked up to Anthony, showed him a handgun, and ejected a round from it. *Id.* at pp. 59-60. After seeing the handgun, Anthony briefly spoke to Jackson stating something like "they got a gun, man" and left under the pretext of getting tow straps to pull the car out of the field. *Id.* at p. 60.

Anthony's friend, Ryan Story, called the police at petitioner's request. *Id.* at pp. 86-87. Covert Township Police Officer Allen Marler was called to assist the Michigan State Police in a complaint regarding firearms. *Id.* at p. 103. The police arrived about 30 minutes later. *Id.* at p. 62. The police were told by their dispatcher to look for four black males wearing dark clothing. *Id.* at p. 104. Officer Marler and his partner spotted three such individuals walking northbound on 16th Avenue. *Id.* at p. 105. Two of individuals, Elmer Sullivan and Jeffery Winston stopped and laid on the road when ordered, but a third individual, whom Sullivan and Winston identified as "Shorty" fled the scene. *Id.* at pp. 106-08.

At the time of the March 13th incident, Robert DeGrandchamp lived on 76th Street and owned the blueberry field where the incident occurred. *Id.* at pp. 88-89. DeGrandchamp was aware of the incident and was aware of police involvement. *Id.* at pp. 89-90. The next morning, a group of people came to his house claiming to look for a lost cat. *Id.* at pp. 95-96. Later in the morning, DeGrandchamp's son found a handgun behind their house, which was later turned over to the Sheriff's Department. *Id.* at pp. 90-91. That evening, three gentlemen showed up at DeGrandchamp's house claiming to look for a lost cell phone. *Id.* at pp. 91-92, 95-96.

That same day, Mrs. Degrandchamp turned over the handgun to Charles Loughrin, a deputy with the Van Buren County Sheriff's Department. *Id.* at pp. 97-100. Deputy Loughrin

identified the handgun as a Remington semiautomatic .380 caliber. *Id.* at p. 101. The handgun was turned over to the Michigan State Police. *Id.* at p. 98.

About one month later, Lee Jackson was killed. *Id.* at pp. 63-67. Kyle Gorham, a trooper/investigator for the Michigan State Police, contacted Anthony as part of the investigation into Lee Jackson's death. *Id.* at pp. 117-18. During this investigation, Trooper Gorham became aware of the March 13th incident and Anthony's statement that when he and Jackson went to assist the driver of a vehicle stuck in a blueberry field near Anthony's house, he saw petitioner holding a handgun and ejecting a shell from it. *Id.* at pp. 83-74, 120, 123. Anthony took Trooper Gorham to the field where he saw petitioner eject a shell from the handgun, where Gorham used a metal detector to locate an unfired round of ammunition. *Id.* at pp. 123-25. According to Gorham, the unfired round found in the field had the same caliber and markings as the bullets found in the magazine of the Remington semiautomatic .380 handgun found by Mr. DeGranchamp's son on the morning of March 14, 2007. *Id.* at pp. 125-26. While Anthony assisted Trooper Gorham in recovering the unfired shell involved in the March 13th incident, Anthony testified that he did not feel that petitioner was responsible for Jackson's subsequent death. *Id.* at p. 67. Rather, Anthony stated that petitioner was shot by an individual named Osdemond Bell. *Id.* at p. 66.

## II.     Petitioner's criminal conviction and appeal

Based on these facts, petitioner was charged with felon in possession of a firearm, M.C.L. § 750.224f, and possession of a firearm during the commission of a felony, M.C.L. § 750.227b. *See* State court Register of Actions (docket no. 7); Trial Trans. at pp. 39-40. Following a jury trial in the Van Buren County Circuit Court, petitioner was convicted of both crimes. *People v. Wilson*, No. 285886, slip op. at p. 1 (Mich. App. Jan. 14, 2010) (docket no. 14); Trial Trans. at

pp. 52-60 (docket no. 12).  Petitioner was sentenced to consecutive terms of 34 months to 10 years imprisonment for the felon in possession of a firearm conviction, and 2 years imprisonment for the felony-firearm conviction.  Sent. Trans. at p. 7 (docket no. 13).  *Id.*

Petitioner, through counsel, filed an appeal as of right to the Michigan Court of Appeals, which raised six issues:

I.      Whether [petitioner] was denied a fair trial by the introduction of highly inflammatory evidence of a murder that was totally irrelevant to this gun charge, but that was connected to [petitioner] by innuendo; trial counsel was ineffective in failing to object to the testimony and to the prosecutor's improper argument concerning the murder.  US Const Am XIV.

II.     Whether [petitioner] was denied a fair trial by the introduction of a weapon unconnected to [petitioner] or the charged offenses; trial counsel was ineffective in failing to move to suppress the gun and in failing to object to its admission.  US Const AM VI, XIV.

III.    Whether [petitioner] was denied his right of confrontation by the introduction of testimonial hearsay statements.  US Const Am VI.

IV.     Whether [petitioner's] felony firearm conviction must be vacated because the trial court failed to give complete instructions on the elements of the offense.

V.      Whether [petitioner] is entitled to credit on the minimum term for time served prior to sentencing despite committing this offense while on parole because no additional time was added to his prior sentence when his parole on that sentence was revoked; this violates Michigan law regarding consecutive sentencing.

VI.     Whether [petitioner] is entitled to a corrected presentence report because the objected-to information concerning the homicide in his current report are likely to negatively impact his consideration and treatment by the Department of Corrections.

Petitioner's brief (docket no. 14).  The Michigan Court of Appeals affirmed the convictions.  *See Wilson*, No. 285886.

Petitioner filed an application for leave to appeal to the Michigan Supreme Court raising the same six issues, which was denied. *People v. Wilson*, No. 140581 (Mich. June 28, 2010) (docket no. 15).

Petitioner filed a motion for relief from judgment in the trial court, which that court denied on October 8, 2010. *See* Summary Denial of Motion for Relief from Judgment, No. 07-15836-FH-B (Van Buren Co. Cir. Ct. Oct. 8, 2010) (docket no. 1-1 at pp. 5-6). However, petitioner did not appeal any issues raised in the motion for relief from judgment. He filed his habeas petition on October 19, 2010. *See* Petition (docket no. 1).

Wilson's *pro se* habeas petition raised the first three issues which had been addressed by the Michigan Court of Appeals on direct appeal (in his words):

I.   I was denied a fair trial by the introduction of highly inflammatory evidence of a murder that was totally irrelevant to this gun charge. Trial counsel was ineffective in failing to object to the testimony and to the prosecutor's improper arguments concerning the murder.

II.   I was denied a fair trial by the introduction of a gun unconnected to me or the charged offense. Counsel was ineffective in failure [sic] to suppress the gun and failure to object to admission of the gun.

III.   I was denied the right to confrontation by the introduction of testimonial hearsay statements.

*Id.* [2]

### III.   Procedural default

Where "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claim is barred unless

---

[2] Given the brevity of the argument set forth in the habeas petition, the Court will refer to the relevant arguments as set forth in petitioner's state appellate brief. *See* docket no. 14.

the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). A procedural default "provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice." *Gray v. Netherland*, 518 U.S. 152, 162 (1996). Not every state procedural rule will warrant application of the procedural default doctrine**.** Only a state procedural rule that was "'firmly established and regularly followed' by the time as of which it [was] to be applied," *Ford v. Georgia*, 498 U.S. 411, 424 (1991), will support application of the doctrine. "For a habeas claim to be procedurally defaulted on the basis of a state procedural rule, the petitioner must have violated a procedural rule, but the state court must also have based its decision on the procedural default." *Simpson v. Jones*, 238 F.3d 399, 407 (6th Cir. 2000).

Here, respondent contends that Issue III is procedurally defaulted and not subject to federal habeas review because "[p]etitioner failed to comply with a state procedural rule that requires defendants in criminal cases to present their claims to the trial court before raising them on appeal." Respondent's Brief at p. 19. While respondent limited the procedural default argument to Issue III, the Court notes that petitioner's claims raised in Issue I and II suffered from this same deficiency, and that the Michigan Court of Appeals found that all three of these claims were unpreserved in the trial court. *See Wilson*, No. 285886, slip op. at pp. 1-5. Because petitioner did not comply with the state's contemporaneous-objection rule, the Michigan Court of Appeals treated petitioner's Issues I, II and III as waived on direct appeal and reviewed them only for plain error. *Id.* "[A] state court's plain error analysis does not save a petitioner from procedural default. Plain

error analysis is more properly viewed as a court's right to overlook procedural defects to prevent manifest injustice, but is not equivalent to a review of the merits." *Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006) (citations omitted). *See also, Paprocki v. Foltz*, 869 F.2d 281, 284-285 (6th Cir. 1989) (limited review of an issue to prevent manifest injustice does not constitute a waiver of the procedural default). Accordingly, all of petitioner's issues are procedurally defaulted for purposes of this habeas review.

Habeas review of a procedurally defaulted claim is precluded unless petitioner can demonstrate "cause for the default and actual prejudice as a result of the alleged violation of federal law," or that a failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. "[T]he existence of cause for a procedural default must turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Petitioner in this case claims that his counsel was ineffective for failing to object during trial. If successful, such a claim could serve as both an independent claim of error and as cause to excuse the procedural default of other issues.

Given this procedural background, the Court will address all of petitioner's habeas claims on the merits. Federal courts are not required to address a procedural default issue before deciding against the petitioner on the merits. Judicial economy may counsel addressing the merits of a procedurally defaulted claim "if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997). This is such a case. *See Babick v. Berghuis*, 620 F.3d 571, 576 (6th Cir. 2010) ("[w]e cut to the merits here, since the cause-and-prejudice analysis adds nothing but complexity

to the case"); *Hudson v. Jones*, 351 F.3d 212, 216 (6th Cir. 2003) (the court may proceed to decide the merits of a procedurally defaulted habeas claim where "the question of procedural default presents a complicated question of Michigan law and is unnecessary to [the] disposition of the case").

### IV.    Standard of review under 28 U.S.C. § 2254

Petitioner seeks relief under 28 U.S.C. §2254, which provides that "a district judge shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Before petitioner may seek such relief in federal court, she must first fairly present the substance of her claims to all available state courts, thereby exhausting all state remedies. *Picard v. Connor*, 404 U.S. 270, 277-78 (1981); *Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994); *see* 28 U.S.C. §2254(b)(1)(A). In the present case, petitioner has exhausted his state remedies with respect to her habeas claims.

Where the state court has adjudicated a claim on its merits, the federal district court's habeas corpus review is limited by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides in pertinent part that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The AEDPA "imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 776, 130 S. Ct. 1855, 1862 (2010) (internal quotation marks and citations omitted).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, -- U.S.-- , 131 S. Ct. 770, 786 (2011). The AEDPA's deferential standard "requires Petitioner to show 'the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing [Supreme Court precedent] beyond any possibility for fairminded disagreement.'" *Blackmon v. Booker*, 696 F.3d 536, 538 (6th Cir. 2012), quoting *Harrington* , 131 S. Ct. at 786-87. "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington*, 131 S. Ct. at 786. "If this standard is difficult to meet, that is because it was meant to be." *Id.*

> Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Id.* at 786-87 (internal citations omitted).

Under the "contrary to" clause of § 2254(d)(1), "a federal habeas court may grant the writ only if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decided the case differently than the Supreme Court has on a set of materially indistinguishable facts." *Jalowiec v. Bradshaw*, 657 F.3d 293, 301 (6th Cir.

2011), citing *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). Under the "unreasonable application" clause of § 2254(d)(1), "a federal court may grant the writ only if the state court identified the correct governing legal principle from the Supreme Court's decisions but unreasonably applied that principle to the facts of the petitioner's case." *Id.* A court may not issue a writ of habeas corpus "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411. Rather, to grant habeas relief, the state court's application of the law must be found to be "objectively unreasonable." *Id.* at 409.

A determination of a factual issue by a state court is presumed to be correct. 28 U.S.C. § 2254(e)(1). A habeas petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence that the state court's determination was erroneous. *Magana v. Hofbauer*, 263 F.3d 542, 546-47 (6th Cir. 2001). The presumption of correctness accorded to a state court's findings of fact on federal habeas review also applies to the factual findings of a state appellate court based on the state trial record. *Brumley v. Winegard*, 269 F.3d 629 (6th Cir. 2001).

## V.     Discussion

### A.     Admission and use of evidence regarding Lee Jackson's murder

Petitioner contends that he was denied a fair trial because: the evidence related to Lee Jackson's subsequent murder was irrelevant to his criminal case; the prosecutor was allowed to talk about the murder even though it did not involve petitioner; and petitioner's counsel never objected to the prosecutorial misconduct, but rather talked about murder as well. Petition at p. 6.

### 1. Admission of evidence related to Lee Jackson's murder

The Michigan Court of Appeals addressed the admission of this evidence as follows:

Pursuant to MRE 401, evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." MRE 403. "All evidence offered by the parties is 'prejudicial' to some extent, but the fear of prejudice does not generally render the evidence inadmissible. It is only when the probative value is substantially outweighed by the danger of unfair prejudice that evidence is excluded." *People v. Mills*, 450 Mich. 61, 75, 537 N.W.2d 909 (1995), *mod* 450 Mich. 1212, 539 N.W.2d 504 (1995). Evidence is unfairly prejudicial if it is marginally probative and there is a danger that it will be given undue or preemptive weight by the jury. *People v. Ortiz*, 249 Mich. App. 297, 306, 642 N.W.2d 417 (2001).

\*    \*    \*

Based on defendant's defense at trial, we decline to find plain error requiring reversal because of the admission of this evidence. This case is similar to the circumstances presented in *People v. Knapp*, 244 Mich.App. 361, 377-378, 624 N.W.2d 227 (2001), where the defendant:

> [n]ot only . . . fail[ed] to object at trial to any testimony regarding his [extramarital] affairs, thereby failing to preserve this issue, but defendant also raised the issue himself during his opening statement. . . . Thus, any testimony elicited by the prosecutor regarding this issue was relevant to the issues raised by defendant. A defendant will not be heard to introduce and use evidence to sustain his theory at trial and then argue on appeal that the evidence was prejudicial and denied him a fair trial. *People v. Green*, 228 Mich.App. 684, 691, 580 N.W.2d 444 (1998). Defendant's unpreserved claim, therefore, does not warrant reversal.

Defense counsel stated during opening statement that the prosecutor's main eyewitness, Jason Anthony, lied about seeing defendant in possession of a gun in a blueberry field approximately one month prior to the murder of Lee Jackson. According to the defense, Anthony lied because he was a close friend of Jackson's and, despite the fact that the prosecutor agreed that defendant was not directly involved with the murder, Anthony still blamed defendant for the murder. Defense counsel argued that Anthony was therefore biased against defendant. The defense, then, made information regarding Jackson's murder relevant.

The evidence was also relevant to identify defendant as the individual with the gun who walked up to Anthony in the blueberry field on March 13, 2007. Identity of the person who committed the crime is an essential element of any crime, and identity may be proven by direct or circumstantial evidence. *People v. Kern*, 6 Mich.App. 406, 409, 149 N.W.2d 216 (1967). Defendant specifically challenged Anthony's identification of him. It was only as a result of the murder investigation, however, that defendant's identity in the March 13th incident came to light. The challenged evidence explained to the jury how the police came to investigate defendant. "[I]t is essential that prosecutors and defendants be able to give the jury an intelligible presentation of the full context in which disputed events took place." *People v. Sholl*, 453 Mich. 730, 741, 556 N.W.2d 851 (1996). Based on defendant's arguments and defense theory at trial, we conclude that the evidence was relevant because it had a "tendency" to establish defendant's identity as the perpetrator, explained background information to the jury, and supported Anthony's credibility.

\*   \*   \*

Defendant has failed to demonstrate that any possible error in the admission of or use of the challenged evidence that Jackson was murdered affected his substantial rights, i.e. affected the outcome of the trial. *Carines*, *supra* at 774, 597 N.W.2d 130. Anthony's testimony standing alone, without any testimony or other evidence regarding the murder, was sufficient to establish that he correctly identified defendant as the individual who walked up to him in the blueberry field, displayed a gun, and discharged one unspent bullet. *See People v. Thomas*, 7 Mich.App. 103, 104, 151 N.W.2d 186 (1967) (Evidence sufficient based on one witness's identification of the defendant).

*Wilson*, No. 285886, slip op. at pp. 2-3.

Federal habeas review is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). "[F]ederal habeas corpus relief does not lie for errors of State law." *Id.* at 67, *quoting Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). The state courts are the ultimate expositors of state law in federal habeas proceedings. *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). Here, the state appellate courts found no error of state law in the admission of the evidence related to Lee Jackson's murder. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle*, 502 U.S. at 67-68. "Trial court errors in state procedure and/or evidentiary law

12

do not rise to the level of federal constitutional claims warranting relief in a habeas action unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004), citing *Estelle*, 502 U.S. at 69-70. A state court's ruling on evidence, standing alone, "is simply not cognizable on habeas review." *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007).

Petitioner has not shown that the trial court's admission of evidence related to Lee Jackson's murder rendered his proceedings so fundamentally unfair as to violate the Fourteenth Amendment. On the contrary, it was petitioner's counsel - as opposed to the prosecution - who made the murder relevant as a way to show that Anthony, the prosecution's only eye witness, was biased against petitioner. *See* Trial Trans. at pp. 81-82. Accordingly, petitioner's claim should be denied.

### 2. The prosecutor's references to the murder

The Michigan Court of Appeals addressed the prosecutor's remarks regarding Lee Jackson's murder as follows:

> "[T]he test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *People v. Dobek*, 274 Mich.App. 58, 63, 732 N.W.2d 546 (2007). We must consider the prosecution's statements in the context, and in light of defendant's arguments. *People v. Thomas*, 260 Mich.App. 450, 454, 678 N.W.2d 631 (2004).

> \*      \*      \*

> Moreover, the prosecutor's questions and comments regarding this evidence did not create an undue risk that the jury would convict defendant based on the murder evidence. During his questioning of Anthony, the prosecutor elicited testimony that defendant had nothing to do with the murder of Jackson and that the "common denominator" was Elmer Sullivan (an individual involved in both the March 13th incident and Jackson's murder), not defendant. An investigating police officer also testified that defendant was not at all involved in the murder. Because the evidence was relevant, and the prosecutor reinforced the fact that defendant was

not involved in the murder, the risk of unfair prejudice was low. This is not a case where there was a danger that marginally probative evidence would be given undue or preemptive weight by the jury. *Ortiz*, *supra* at 306, 642 N.W.2d 417.

In ruling, we emphasize that the prosecutor was permitted to rebut defendant's theory of the case that Anthony was implicating defendant only because he blamed defendant for Jackson's murder. *People v. Schutte*, 240 Mich. App. 713, 721, 613 N.W.2d 370 (2000), *overruled on other gds Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004) (Prosecutor's remarks were proper where they rebutted the defendant's opening statement and allegations that the victim fabricated the story. "Otherwise improper prosecutorial remarks generally do not require reversal if they are responsive to issues raised by defense counsel."). Viewing the prosecutor's arguments in context, the prosecutor's arguments were responsive to the defense's theories. *Schutte*, *supra* at 721, 613 N.W.2d 370.

We note that defendant also challenges the prosecutor's brief statement in closing argument, telling the jury that it would "have to somewhat speculate" what defendant and the others were doing that night in the blueberry field and then making reference to the Jackson murder. We conclude that this statement does not constitute plain error requiring reversal. The prosecutor did not actually speculate about what they were doing and he repeatedly emphasized that defendant was not involved in Jackson's subsequent murder. Defendant did not object to this statement, and he has not demonstrated that any prejudice could not have been cured by a timely objection and instruction. *Callon*, *supra* at 329–330, 662 N.W.2d 501.

Defendant has failed to demonstrate that any possible error in the admission of or use of the challenged evidence that Jackson was murdered affected his substantial rights, i.e. affected the outcome of the trial. *Carines*, *supra* at 774, 597 N.W.2d 130. Anthony's testimony standing alone, without any testimony or other evidence regarding the murder, was sufficient to establish that he correctly identified defendant as the individual who walked up to him in the blueberry field, displayed a gun, and discharged one unspent bullet. *See People v. Thomas*, 7 Mich.App. 103, 104, 151 N.W.2d 186 (1967) (Evidence sufficient based on one witness's identification of the defendant).

*Wilson*, No. 285886, slip op. at pp. 1-3.

### a.     Prosecutorial misconduct

Petitioner contends that the prosecutor was allowed to talk about the unrelated murder of Lee Jackson and painted a picture of petitioner "as a guy who affiliates his [sic] self with murderers." Petition at p. 6. In resolving a claim of prosecutorial misconduct, the Court considers

the prosecutor's remarks within the context of the entire trial to determine whether any improper remarks resulted in prejudicial error. *Cristini v. McKee*, 526 F.3d 888, 901 (6th Cir. 2008). "Prosecutors can argue the record, highlight any inconsistencies or inadequacies of the defense, and forcefully assert reasonable inferences from the evidence." *Id.* However, prosecutors cannot offer their opinions as to credibility of a witness or the guilt of a defendant, or discuss any purported facts not introduced into evidence. *Id.* Nevertheless, even if the prosecutor's conduct was improper or even universally condemned, the court can provide federal habeas corpus relief only if the statements were so flagrant and egregious as to deny the petitioner a fundamentally fair trial. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643-45 (1974); *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003); *Hutchison v. Bell*, 303 F.3d 720, 750 (6th Cir. 2002). "The relevant question is whether the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citation and internal quotations omitted).

When a petitioner makes a claim of prosecutorial misconduct, 'the touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor.'" *Serra v. Michigan Department of Corrections*, 4 F.3d 1348, 1355 (6th Cir.1993) (*quoting Smith v. Phillips*, 455 U.S. 209, 219 (1982)). The court should consider four factors in determining whether a prosecutor's improper remarks are so flagrant as to rise to the level of a due process violation: (1) the likelihood that the prosecutor's remarks tended to mislead the jury or to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) whether the remarks were accidentally or deliberately placed before the jury; and (4) the total strength of the evidence against the accused. *Bates v. Bell*, 402 F.3d 635, 641 (6th Cir. 2005).

### b.    The prosecutor's opening statement

In his opening statement, the prosecutor briefly referred to the investigation into the death of Lee Jackson in an apparent attempt to explain how Anthony initially came into contact with Trooper Gorham and later assisted Gorham in locating the shell in the blueberry field. Trial Trans. at pp. 48-49. While the prosecutor stated that Lee Jackson's death involved some of the individuals present in the blueberry field on March 13th, he noted that petitioner "was not present" and not directly involved in Jackson's death. *Id.* at p. 48. Under these circumstances, the prosecutor's statements were not improper.

Furthermore, it appears that the prosecutor's statements were in anticipation of defense counsel's theory of the case, i.e., that Anthony was not a credible witness. In defense counsel's opening statement, he pointed out to the jury that Anthony was the only witness to see petitioner with the weapon and stated "the evidence will show that that witness [Anthony] is bias [sic]." Trial Trans. at p. 50. As evidence of the bias, defense counsel stated "that Mr. Anthony has reason to believe that my client had something to do with [Jackson's murder]" explaining that "[s]omeone is dead, his friend is dead, and he wants somebody to blame so he's pointing at my guy [petitioner] and saying my guy had a gun that night." *Id.* at pp. 50-51.

### c.    Prosecutor's statement in closing argument

In his state appellate brief, petitioner raised another claim of prosecutorial misconduct which arose during closing argument:

> The prosecutor went so far as to ask the jury to speculate what [petitioner], Elmer Sullivan and Jeffery Winston were doing in the area of Jason Anthony's house on March 13, knowing that Lee Jackson was there -- Lee Jackson, who was shot and killed a short time later by another associate, in the company of Elmer Sullivan, from the very same vehicle in which [petitioner], armed with a handgun, was a passenger on March 13. Clearly, the prosecutor was insinuating and asking the jury to

speculate that Wilson, Sullivan, and Winston had come to kill Mr. Jackson on March 13.

Petitioner's Brief at p. 6 (docket no. 14).

Petitioner appears to be referring to the prosecutor's closing argument, which provided in pertinent part:

At this point in time you've heard all of the evidence in this case and obviously our case pretty much rests on Jason Anthony along with the circumstances that go along with it and I think it's important to note what those circumstances are because they certainly bear on the credibility of Mr. Anthony and certainly I believe that without any question whatsoever, on March the 13th in South Haven Township, on 76ty Street, a vehicle belonging to a Tiffany Perkins who obviously from other things that we've established is an associate and knows Elmer Sullivan and other people apparently because Elmer is the common denominator here. That vehicle gets stuck in a blueberry field right near Mr. Anthony's house. At that time Lee Jackson, who ends up dead about a month later, is also at Jason Anthony's house, okay. We also know that Lee Jackson ultimately ends up dead as a result of a shooting by a gentleman named Osdemond Bell who is in the company of Elmer Sullivan. Osdemond Bell wasn't out there on the 13th of March, but Elmer Sullivan is and along with Jeffrey Winston is [petitioner], so what, if anything, they were up to as far as using that gun that night, what their plan was, why they were pulling into a blueberry field adjacent to Mr. Anthony's house, we have to somewhat speculate, but I think it's important to at least recognize those factors.

Trial Trans. at pp. 147-48.

Given defense counsel's statements that Anthony was a biased witness who blamed petitioner for Lee Jackson's death, the prosecutor could properly address evidence related to Lee Jackson's murder to rebut defense counsel's attempt to discredit Anthony's testimony. *See generally*, *United States v. Reynolds*, 534 Fed. Appx. 347, 368-69 (6th Cir. 2013) ("when examining whether a prosecutor's remarks are improper, the court should consider the remarks 'with particular attention to whether they may have been invited by defense counsel's conduct'") (quoting *United States v. Gonzalez*, 512 F.3d 285, 292 (6th Cir. 2008). *See also*, *United States v. Young*, 470 U.S.

1, 12-13 (1985) ("if the prosecutor's remarks were 'invited,' and did no more than respond substantially in order to 'right the scale,' such comments would not warrant reversing a conviction")

In addition, contrary to petitioner's claim, the prosecutor did not ask the jury to speculate with respect to whether petitioner committed the charged crimes of being a felon in possession of a firearm and possession of a firearm during the commission of a felony. Rather, the only cause for speculation was why the car pulled into a blueberry field adjacent to Anthony's house. The Court views this comment as an attempt by the prosecutor to both address petitioner's claim that Anthony was biased and to admit that the government presented no evidence as to why petitioner was stuck in a blueberry field that night with Sullivan and Winston. Under these circumstances, the Court does not consider this statement improper.

The Michigan Court of Appeals' decision was neither contrary to, nor an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254 (d). Accordingly, petitioner is not entitled to relief on this claim.

### d. Ineffective assistance of trial counsel for failing to object to the evidence of Lee Jackson's murder

Petitioner contends that his counsel was ineffective for failing to object to the admission of the murder evidence and the prosecutor's statements regarding that evidence. The Michigan Court of Appeals addressed plaintiff's ineffective assistance of counsel claim as follows:

> Lastly, with respect to the murder references, defendant claims his counsel was ineffective. In order to establish this claim, defendant must demonstrate that his trial counsel's performance fell below an objective standard of reasonableness according to prevailing professional norms, and that, absent trial counsel's error, there is a reasonable probability that the result of the proceedings would have been different. *People v. Carbin*, 463 Mich. 590, 600, 623 N.W.2d 884 (2001).

Defendant argues that his trial counsel had a "misguided" trial strategy of not objecting to the murder references and instead choosing a defense theory premised on it, specifically that Anthony was biased against defendant because of the murder. We decline to second-guess defense counsel's trial strategy. *People v. Davis*, 250 Mich.App. 357, 368, 649 N.W.2d 94 (2002). A mere difference of opinion with respect to trial strategy does not constitute ineffective assistance of counsel. *People v. Stubli*, 163 Mich.App. 376, 381, 413 N.W.2d 804 (1987). Moreover, defense counsel's chosen strategy of arguing that Anthony, the only testifying eyewitness to defendant's possession of a gun, was biased against defendant was reasonable given the fact that Jackson was Anthony's close friend, Anthony admitted that he felt hurt by Jackson's murder, and Anthony failed to promptly report the incident in the blueberry field to police. Additionally, as previously discussed, the murder testimony was properly admissible and the prosecutor's arguments concerning the same were not improper. Defense counsel is not ineffective for failing to argue a meritless position. *People v. Snider*, 239 Mich.App. 393, 425, 608 N.W.2d 502 (2000).

*Wilson*, No. 285886, slip op. at pp. 3-4.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth a two-prong test to determine whether counsel's assistance was so defective as to require reversal of a conviction: (1) the defendant must show that counsel's performance was deficient and (2) the defendant must show that counsel's deficient performance prejudiced the defense, i.e., "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland,* 466 U.S. at 687. In making this determination, the court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690. "[T]he threshold issue is not whether [petitioner's] attorney was inadequate; rather, it is whether he was so *manifestly* ineffective that defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (emphasis in original), *cert. denied* 508 U.S. 975 (1993). Under *Strickland*, the reviewing court's scrutiny of counsel's performance is highly deferential, and the court is to presume that counsel

rendered adequate assistance and made decisions with reasonable professional judgment. *Strickland*, 466 U.S. at 689-690.

As the Michigan Court of Appeals explained, petitioner's trial strategy was to discredit Anthony's testimony and show that he was biased against petitioner. It is a well-established principle "matters of trial strategy are left to counsel's discretion." *Dixon v. Houk*, 737 F.3d 1003, 1012 (6th Cir. 2013). "Thus, where a defendant focuses on counsel's 'strategic choices made after thorough investigation of law and facts,' the Supreme Court guides us that such choices 'are *virtually unchallengeable*.'" *Id.*, *quoting Strickland*, 466 U.S. at 690. Under the circumstances of this case, defense counsel's trial strategy was reasonable. While petitioner now disagrees with that strategy, he has not shown that it was deficient. The government's case against petitioner was based largely upon Anthony's testimony because he was the only eye witness to the March 13, 2007 event who testified at trial. Under the circumstances of this case, defense counsel's strategy of discrediting the prosecution's sole eyewitness was reasonable.

Furthermore, petitioner was not prejudiced by his counsel's actions in not objecting to the evidence surrounding Jackson's murder. As discussed, *supra*, both the prosecution and the defense presented evidence of the murder. Given that petitioner's prosecution arose out of Jackson's murder investigation, it was reasonable (if not necessary) for that the prosecutor to refer to the murder.

Under these circumstances, petitioner's trial counsel was not ineffective for failing to object to the prosecutor's references to the murder. These would have been meritless objections given that defense counsel's trial strategy was to use Jackson's murder as a way to discredit the prosecution's only eye witness. *See Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013) ("[o]mitting

meritless arguments is neither professionally unreasonable nor prejudicial"); *United States v. Sanders*, 165 F.3d 248, 253 (3rd Cir. 1999) ("[t]here can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument"); *Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998) ("[c]ounsel was not required to raise meritless arguments to avoid a charge of ineffective assistance of counsel"); *Lilly v. Gilmore*, 988 F.2d 783, 786 (7th Cir. 1993) ("[t]he Sixth Amendment does not require counsel . . . to press meritless issues before a court"). Petitioner cannot claim that his trial counsel was ineffective with respect to the admission of evidence regarding Lee Jackson's murder.

The Michigan Court of Appeals' decision was neither contrary to, nor an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254 (d). Accordingly, petitioner is not entitled to relief on this claim.

**B.      Introduction of the .380 caliber handgun at trial**

Petitioner contends that he was denied a fair trial by the introduction of a handgun which was unconnected to him or the charged offense and that his counsel was ineffective for failing to object to the admission of this evidence. The Michigan Court of Appeals addressed these issues as follows:

> Defendant next challenges the admission of a .380–caliber gun at trial and defense counsel's failure to object or to move to exclude the gun. Defense counsel indicated that he had "no objection" to the admission of the gun, and defendant has thus waived any claim of error regarding its admission on appeal. *People v. Carter*, 462 Mich. 206, 214, 612 N.W.2d 144 (2000). Nonetheless, we review this claim because defendant raises a related ineffective assistance of counsel claim.
>
> "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." MRE 901(a). "[T]here must be sufficient

evidence of (1) the exhibit's identity and (2) its connection to the crime to support its admission at trial. A witness is not required to positively identify the weapon as being the weapon used in the crime, and it is not error requiring reversal to admit a 'similar' weapon." *People v. Hence*, 110 Mich.App. 154, 162, 312 N.W.2d 191 (1981) (internal citations omitted).

After reviewing the record, we conclude that the prosecutor presented sufficient evidence to support the admission of the .380–caliber gun at trial. Although the weapon was not found in defendant's possession, it was found on the blueberry field owner's property where defendant was during the incident, i.e., a location to which defendant had access and had, in fact, been present. *People v. Kramer*, 108 Mich.App. 240, 253, 310 N.W.2d 347 (1981). Furthermore, the gun was discovered the day after the March 13th incident. Anthony's description of the gun defendant possessed was similar to the gun admitted at trial; a darker colored pistol (not a revolver), which was approximately a .32–caliber or .38p-caliber, with a slide action. Anthony was not required to positively identify the gun "as being the weapon used in the crime, and it is not error requiring reversal to admit a 'similar' weapon." *Hence*, *supra* at 162, 312 N.W.2d 191.

Finally, after the gun was discovered, it was immediately turned over to the local police, who then turned it over to the Michigan State Police for further testing. Any challenges regarding the identification of the gun and its connection to defendant or the chain of custody relate to the weight of the evidence instead of its admissibility. *People v. White*, 208 Mich.App. 126, 130-131, 527 N.W.2d 34 (1994).

*Wilson*, No. 258886, slip op. at pp. 4-5.

a.        **Introduction of the .380 caliber handgun**

While petitioner claims that the admission of the handgun into evidence amounted to a due process violation, this claim is nothing more than an evidentiary issue under state law. Federal habeas review is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States and does not lie for errors of State law. *Estelle*, 502 U.S. at 67-68. The Michigan Court of Appeals found that the handgun was properly admitted into evidence. Petitioner's disagreement with the state trial court's evidentiary ruling is not cognizable on federal habeas review. *Id. See Sanborn v. Parker*, 289 F.Supp.2d 818, 822-23 (W.D. Ky. 2003) ("a mere statement that 'due process' rights have been violated does not necessarily give rise to a specific

federal constitutional claim [as] '[d]ue process,' like 'fair trial,' can be a catchphrase used by habeas petitioners as part of an allegation about any type of trial court error, including errors in rulings based on state law." ) (quoting *Petrucelli v. Coombe*, 735 F.2d 684, 688 (2d Cir. 1984). Accordingly, petitioner's claim regarding the trial court's admission of the handgun is not cognizable on federal habeas review.

### b.    Trial counsel's failure to object to admission of the handgun

Petitioner contends that his defense counsel was ineffective for failing to object to the admission of the handgun at trial.  Contrary to petitioner's contention, the Michigan Court of Appeals found that defense counsel was not ineffective stating that:

> Because the gun was properly admitted, a motion to suppress or an objection to its admission would have been futile.  Defense counsel was not required to argue a meritless position.  *Snider*, *supra* at 425, 608 N.W.2d 502.

*Wilson*, No. 285886, slip op. at p. 5.

The Michigan Court of Appeals determined that the handgun was properly admitted under Michigan law.  As such, a motion to oppose admission of the evidence by defense counsel would be meritless.  Counsel cannot be ineffective for failing to raise a meritless or futile objection. *See Coley*, 706 F.3d at 752; *Sanders*, 165 F.3d at 253; *Ludwig*, 162 F.3d at 459; *Lilly*, 988 F.2d at 786.   Furthermore, the record reflects that petitioner's counsel cross-examined both Robert Degrandchamp and Deputy Loughrin regarding the discovery, identification and chain of custody with respect to the handgun.  Trial trans. at pp. 93-96, 99-102.

The Michigan Court of Appeals' decision was neither contrary to, nor an unreasonable application of, clearly established Federal law as determined by the Supreme Court;

23

nor was the decision based on an unreasonable determination of the facts in light of the evidence

presented. 28 U.S.C. § 2254 (d). Petitioner is not entitled to relief on this claim.

### C.       Petitioner's right to confront witnesses

Petitioner contends that he was denied the right to a fair trial because the prosecutor

was allowed to use statements from witnesses that defense counsel was never able to cross-examine.

The Michigan Court of Appeals addressed this claim as follows:

> Defendant also argues on appeal that his confrontation rights were violated
> by Officer Allen Marler's testimony regarding statements made by Elmer Sullivan
> and Jeffrey Winston. Because defendant raised no objection to this evidence at trial,
> we review this unpreserved issue for plain error. *See People v. Shepherd*, 472 Mich.
> 343, 347, 697 N.W.2d 144 (2005) (A Confrontation Clause violation is subject to the
> harmless error test.) The Confrontation Clause requires the exclusion of "testimonial
> statements of a witness who did not appear at trial unless he was unavailable to
> testify, and the defendant had a prior opportunity for cross-examination." *Crawford*,
> *supra* at 53–54; US Const, Am VI; Const 1963, art 1, § 20.

> Neither Sullivan nor Winston testified at trial, and the record does not reflect
> that defendant had a prior opportunity to cross-examine them. *Crawford*, *supra*.
> Instead, Marler testified that he asked Sullivan and Winston the identity of the third
> individual who was walking with them, but ran off into the field that night when
> Marler ordered them to stop, and they identified a man nicknamed "Shorty"
> (defendant's nickname). We agree with defendant that the statements made by
> Sullivan and Winston to Marler, after they were apprehended and Marler began
> questioning them, were testimonial in nature. "Statements taken by police officers
> in the course of interrogations are. . . testimonial under even a narrow standard."
> *People v. McPherson*, 263 Mich.App. 124, 132, 687 N.W.2d 370 (2004), *quoting*
> *Crawford*, *supra* at 52. The admission of these testimonial statements violated
> defendant's right of confrontation. *Crawford*, *supra*.

> However, we conclude that the error in admitting the statements was
> harmless, *Shepherd*, *supra* at 347, 697 N.W.2d 144, given the significant other
> evidence identifying and implicating defendant. Anthony unequivocally identified
> defendant as the individual who approached him in the blueberry patch, held the gun,
> and released the slide to dispense a bullet. Anthony was familiar with defendant and
> had adequate lighting. A .380–caliber gun was located in the blueberry field the day
> after the incident, a bullet was found close to where the vehicle in which defendant
> had been riding was stuck in the field, and it was similar to the bullets that were

discovered inside the .380–caliber gun. It cannot be said, then, that the erroneous admission of the statements affected the outcome of the trial.

*Wilson*, No. 285886, slip op. at p. 5.

Assuming that the Michigan Court of Appeals properly found a violation of the Confrontation Clause, the Court agrees with that court that such an error was harmless. In habeas actions brought pursuant to § 2254, a federal court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect' standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619 (1993). *See Fry v Pliler*, 551 U.S. 112, 121-22 (2007). The *Brecht* standard provides that "an error is harmless unless it had substantial and injurious effect or influence in determining the jury's verdict." *Id.* at 116 (internal quotation marks omitted). Here, the only evidence presented by Sullivan and Winston was a statement to Officer Marler that the man who fled the police was named "Shorty." This evidence was cumulative of the testimony given by Anthony, an eye witness who knew petitioner and unequivocally identified petitioner as the person with the handgun during the March 13th incident. Trial Trans. at pp. 56-60. Although it was dark at the time of the incident, the car stuck in the blueberry field had its lights on. *Id.* at pp. 61-62. In addition, Anthony testified that he was so close to the individuals that he could see everyone and that he knew petitioner well enough to testify that petitioner's nickname was "Shorty." *Id.* at pp. 62, 66-67. Defense counsel could not get Anthony to waiver on his identification of petitioner during cross-examination. For example, while Anthony testified that he did not hang out with petitioner, he knew petitioner by face and by name. *Id.* at pp. 71-72. Based on this record, the trial court's admission of Officer Marler's testimony regarding statements made to him by Sullivan and Winston was harmless error, because it did not have "substantial and

injurious effect or influence in determining the jury's verdict." *Fry*, at 116 (internal quotation marks omitted).

The Michigan Court of Appeals' decision was neither contrary to, nor an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254 (d). Accordingly, petitioner is not entitled to relief on this claim.

## VI.    Recommendation

I respectfully recommend that petitioner's habeas petition be **DENIED**. Rule 8, Rules Governing § 2254 Cases in the United States District Courts.


Dated:  March 5, 2014                                     /s/ Hugh W. Brenneman, Jr.
                                                          HUGH W. BRENNEMAN, JR.
                                                          United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).